KEENE CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant,

EAGLE–PICHER INDUSTRIES, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

GAF CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant,

UNR INDUSTRIES, INC., et al., Plaintiffs,

v.

The UNITED STATES, Defendant,

FIBREBOARD CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant,

H.K. PORTER COMPANY, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

RAYMARK INDUSTRIES, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 579–79C, 585–81C, 170–83C, 287–83C, 16–84C, 514–84C, 515–85C and 12–88C.

United States Claims Court.

June 1, 1989.

As Amended by Order of Reconsideration June 28, 1989.

Paul C. Warnke, Washington, D.C., for plaintiff Keene Corp. John E. Kidd and Lauren B. Homer, Anderson Russell Kill & Olick, P.C., New York City, and Philip H. Hecht, Clifford & Warnke, of counsel.

William J. Spriggs, Washington, D.C., for Eagle–Picher Industries, Inc. Joe G. Hollingsworth, Paul G. Gaston, and Catherine R. Baumer, of counsel.

Paul A. Zevnik, Washington, D.C., for GAF Corp. Sidney S. Rosdeitcher, David G. Bookbinder, and William N. Gerson, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel.

Joe G. Hollingsworth, Washington, D.C., for UNR Industries, Inc. William J. Spriggs, Paul G. Gaston, and Catherine R. Baumer, of counsel.

Robert M. Chilvers, San Francisco, Cal., for Fibreboard Corp.

Peter J. Kalis, Pittsburgh, Pa., for H.K. Porter Co., Inc. Thomas E. Birsic, Kirkpatrick & Lockhart, Pittsburgh, Pa., of counsel.

Jeffrey D. Lewin, San Diego, Cal., for Raymark Industries, Inc. Donald G. Rez, Sullivan, McWilliams, Lewin & Markham, San Diego, Cal., of counsel.

Scott D. Austin, John Beling, William E. Michaels, Henry T. Miller, and David S. Fishback, Sr. Trial Counsel, Washington, D.C., with whom were John R. Bolton, Asst. Atty. Gen. for defendant. J. Patrick Glynn, Director, Torts Branch, and Harold J. Engel, Deputy Director, of counsel.

## OPINION

NETTESHEIM, Judge.

These cases are before the court on defendant's motion for summary judgment based on a lack of jurisdiction under the restriction imposed by 28 U.S.C. § 1500 (1982).

## BACKGROUND

On April 6, 1987, the Claims Court entered an order provisionally dismissing three cases brought by Johns–Manville Corporation and Johns–Manville Sales Corporation (Nos. 465–83C, 688–83C, & 1–84C). *Keene v. United States*, 12 Cl.Ct. 197 (1987). These three cases sought indemnification for plaintiffs' liabilities to shipyard workers for injuries caused by exposure to asbestos. Because the same claims were pending in other courts at the same time plaintiffs commenced their actions in the Claims Court, jurisdiction was foreclosed by 28 U.S.C. § 1500. The statute provides:

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action arose, was, in respect thereto, acting or professing to

act, directly or indirectly under the authority of the United States.

The order was certified for interlocutory review.[1] On appeal plaintiffs-appellants argued before the Federal Circuit that since their third-party suits against the Government in district courts are based on tort theories and the direct action suits in Claims Court are founded on express and implied contract, they are different claims and thus not subject to the bar of section 1500. Further, they contended that where, as here, subject matter jurisdiction is not concurrent, forcing a plaintiff to elect between proceeding in district courts or the Claims Court, a strict application of section 1500 may preclude any judicial hearing of some theories of recovery. Since district courts have exclusive jurisdiction of tort actions against the United States and the Claims Court has exclusive jurisdiction of contract claims above $10,000, appellants also argued that proceeding in only one forum at a time to avoid offending section 1500 may mean that the statute of limitations eliminates the possibility of pursuing an alternative remedy.

Basing its analysis on both the legislative history of section 1500 and on case law disclosed by the predecessor United States Court of Claims interpreting the term "claim" as used in the statute, the Federal Circuit reasoned that a claim is defined by the facts supporting a suit. Thus, claims grounded on different legal theories of recovery, but founded on the same underlying facts, regardless of what legal theory of recovery those facts are used to support, were held to be the same claim. Since appellants' claims in district court and in the Claims Court were based on the same operative facts, they constitute the same claim, and, thus, the Claims Court correctly held that section 1500 denied it jurisdiction of these cases. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1563–64 (Fed.Cir.1988) (per curiam), *cert. denied*, — U.S. —, 109 S.Ct. 1342, 103 L.Ed.2d

811 (1989), *aff'g, Keene Corp. v. United States*, 12 Cl.Ct. 197.

The appellate court concluded that section 1500 "was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts." 855 F.2d at 1564. Since a plaintiff has no right to pursue a claim in multiple courts simultaneously, Congress' action in forcing an election was aimed at preventing precisely that which would result if appellants' position was adopted— the necessity for the Government to defend the same claim both in the Claims Court and in district courts.

The dismissed cases were but three of eleven cases filed in the Claims Court by asbestos product manufacturers seeking indemnification and/or contribution from the United States for damages incurred in litigating or settling claims from injured shipyard workers. Following affirmance of the trial court's order, defendant, on November 16, 1988, moved for summary judgment in the remaining eight cases.[2] This motion asserted that, following the rationale of the Federal Circuit, at the time of filing in the Claims Court (or its predecessor), plaintiffs in all eight cases had "pending in ... [another] court" a suit(s) against the United States. Proceedings on defendant's motion were stayed while appellants in *Johns–Manville Corp.* asked the Supreme Court to consider the order, and briefing resumed and argument on defendant's motion was held after the Supreme Court declined further review.

In order to rule on defendant's motion, this court must first examine the suits identified by defendant to determine (1) if they make the same claims as those made by plaintiffs in the Claims Court, *i.e.*, are predicated on the same operative facts, irrespective of the legal theory pleaded; and (2) as to each plaintiff in the Claims Court,

---

1. The order was reviewed *sub nom. Johns–Manville Corp. v. United States.*

2. On February 27, 1987, defendant moved in respect of five of the plaintiffs, as well as the

Johns–Manville plaintiffs. Further briefing and decision were deferred pending the decision in *Johns–Manville Corp. See Keene Corp.*, 12 Cl.Ct. at 198–99 n. 1.

whether its prior-filed suit was pending at the time its Claims Court suit was filed.

## FACTS

Plaintiffs are Keene Corporation ("Keene"); Eagle–Picher Industries, Inc. ("Eagle–Picher"); GAF Corporation ("GAF"); UNR Industries, Inc., and UNARCO Industries, Inc. (collectively referred to as "UNR"); Fibreboard Corporation ("Fibreboard"); H.K. Porter Company, Inc. ("H.K. Porter"); and Raymark Industries, Inc. ("Raymark"). Keene has pending two actions in the Claims Court; the remaining plaintiffs, one each. The factual section of this opinion examines the allegations of the actions filed in district court, some of which involve multiple Claims Court plaintiffs; discusses the present status of these actions; and examines the allegations of each plaintiff's Claims Court action.

I. *In re All Maine Asbestos Litigation,* Master Asbestos Docket (D.Me., filed July 21, 1982)

In the omnibus *In re All Maine Asbestos Litigation,* a consolidation of 225 suits brought by present or former shipyard workers or their representatives claiming injury from exposure to asbestos at two Maine shipyards, defendant manufacturers and suppliers commenced third-party actions for contribution or indemnification against the United States. These third-party suits were initiated by Model Third–Party Complaint Against the United States of America "A" ("Model Third–Party Complaint A"), in which the underlying plaintiffs claimed exposure at Bath Iron Works, a private shipyard, and by Model Third–Party Complaint Against the United States of America "B" ("Model Third–Party Complaint B"), in which the underlying plaintiffs claimed exposure at Portsmouth Naval Shipyard.[3] In both of these complaints, filed on July 21, 1982, Eagle–Picher, UNR, Fibreboard, H.K. Porter, and Raymark were third-party plaintiffs.

### 1. Model Third–Party Complaint A

Five of the complaint's nine claims are based on negligence and are differentiated by the source and substance of the duty owed and allegedly breached.

Claim 1: Duty to warn of risk of exposure based on the Government's role as seller of asbestos.

Claim 5: Duty to exercise care for workers' safety and to warn them of potential risk based on the Government's role as promulgator of specifications requiring use of asbestos and as the party in control of shipyards.

Claim 6: Duty to exercise care for workers' safety and to warn them of potential risk based on third-party defendant's controlling role in the shipyards, both as owner of vessels and as promulgator of specifications requiring the use of asbestos.

Claim 7: Duty to warn and to establish adequate safety regulations and to enforce the safety regulations established based on the Government's controlling role in undertaking study and control of risks of asbestos exposure.

Claim 8: Duty to warn of harm from interaction of tobacco and asbestos exposure based on third-party defendant's superior knowledge of danger of that interaction.

Claim 2, in strict liability, is stated contingently: The manufacturers deny plaintiffs' allegation that the asbestos and asbestos products that they sold were defective or unreasonably dangerous. However, the third-party plaintiffs claim that if the asbestos and asbestos products that they sold are found to have been defective or unreasonably dangerous, then the asbestos and asbestos products sold by third-party defendant to them were defective and unreasonably dangerous.

Model Third–Party Complaint A contains two claims based on implied warranty. Claim 3 alleges breach of warranty of safety and fitness for intended purpose based on third-party defendant's role as seller of asbestos. Claim 4 alleges breach of an implied warranty to exercise due care in

---

**3.** Unlike the claims made in the *Johns–Manville Corp.* suits, the *In re All Maine Asbestos* claims did not specify a time period during which plaintiffs were exposed to asbestos and asbestos products.

specifying asbestos products and in regulating their use to ensure a safe workplace.

Finally, the complaint contains a claim stating that if admiralty jurisdiction applies, third-party plaintiffs are entitled to contribution and indemnification under admiralty and maritime law.

### 2. Model Third–Party Complaint B

This complaint essentially mirrors Model–Third Party Complaint A, with the following minor exceptions. Negligence claims 6 and 8 plead breach of duty to warn of dangers of asbestos exposures subsequent to shipyard employment. Claim 2 alleges strict liability only for raw asbestos sold by third-party defendants, not asbestos products.

### 3. Current Status

The third-party actions in *In re All Maine Asbestos Litigation* have been dismissed by the federal district court in Maine. All claims of Model Third–Party Complaint A but one were dismissed by order of February 23, 1984. *In re All Maine Asbestos Litigation*, 581 F.Supp. 963 (D.Me.1984). Dismissal of Claim VI against the Government as vessel owner was denied. Following reconsideration of its position on the vessel owner claim, the court on March 12, 1987, entered an order dismissing the remaining Model Third–Party Complaint A claim. *In re All Maine Asbestos Litigation (BIW Cases)*, 655 F.Supp. 1169 (D.Me.1987). The orders of dismissal were affirmed on July 20, 1988. *In re All Maine Asbestos Litigation (BIW Cases)*, 854 F.2d 1328 (Fed.Cir.1988) (Table), *aff'g mem.*, 651 F.Supp. 913 (D.Me. 1986), 655 F.Supp. 1169 (D.Me.1987).

The contract and tort claims of Model Third–Party Complaint B also were dismissed in 1984, but decision on the vessel owner claim was reserved. *In re All Maine Asbestos Litigation*, 581 F.Supp. at 981. Dismissal of that claim was later denied. *In re All Maine Asbestos Litigation (PNS Cases)*, 589 F.Supp. 1571 (D.Me. 1984). On interlocutory review of the ruling on the admiralty claim, the First Circuit reversed, and subsequently a petition for writ of *certiorari* was denied. *In re All Maine Asbestos Litigation (PNS Cases)*, 772 F.2d 1023 (1st Cir.1985), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). Finally, the district court entered an order dismissing with prejudice all claims against the United States in Model Third–Party Complaint B. *In re All Maine Asbestos Litigation (PNS Cases)* Master Asbestos Docket (D.Me. July 16, 1986).

### II. Claims Court cases involving Third–Party plaintiffs in *In re All Maine Asbestos Litigation*

#### 1. *Eagle–Picher Industries, Inc.*, No. 170–83C (Cl.Ct., filed Mar. 25, 1983)

On March 25, 1983, Eagle–Picher filed suit in the Claims Court based on contractual theories allegedly entitling it to recover costs associated with litigating and settling claims against plaintiff for asbestos-caused injuries.

According to Eagle–Picher, the Government's promulgation and enforcement of specifications for asbestos products created a warranty of accuracy, feasibility, and safety of complying products. By both writing specifications and controlling the workplace where asbestos products were used, the Government impliedly warranted that it would use sufficient care in specifying and using such products that the workplace would be safe. Eagle–Picher also alleged that the Government had an implied contractual duty to reveal to plaintiff its superior knowledge of the dangers of asbestos growing out of that superior knowledge and its role as issuer of specifications.

#### 2. *UNR Industries, Inc.*, No. 16–84C (Cl.Ct., filed Jan. 16, 1984)

On January 16, 1984, UNR filed an action in the Claims Court seeking money damages for breach of express and implied contracts. The complaint alleges breach of five warranties or contractual duties: a warranty of safety arising from the Government's participation in development of UNR's asbestos products based on the Government's promulgation and enforcement of product specifications; a warranty that those specifications were accurate,

feasible, and safe based on the Government's role as supplier of asbestos and from its requirement that asbestos be used in UNR's insulation products; a warranty that such products would be free of defects based on the Government's role in controlling the development of insulation products and in controlling the use of the products in the shipyards; and a warranty that those products would be used safely based on the Government's superior knowledge of the danger posed by asbestos products and a contractual duty to reveal that knowledge to UNR.

3. *Fibreboard Corp.*, No. 514–84C (Cl.Ct., filed Oct. 4, 1984)

Filed in the Claims Court on October 4, 1984, Fibreboard's complaint grounds entitlement to indemnification for expenses incurred in settling claims against Fibreboard brought by shipyard workers exposed to asbestos products supplied by Fibreboard "[d]uring World War II, and at other times," Compl. ¶ 1, on the Government's breach of express and implied contracts, on violation of a statute and the fifth amendment of the United States Constitution, and on considerations of equity.

Fibreboard makes six contract claims: 1) By writing specifications for asbestos products and requiring compliance with them, the Government warranted that the specifications were adequate and that compliance would produce a satisfactory product; 2) by requiring compliance with wartime orders and regulations, the Government impliedly agreed to hold Fibreboard harmless from any resulting liability; 3) as a supplier of raw asbestos, the Government warranted its suitability, fitness, and safety for its intended purpose; 4) by its control over specifications and over the use of the asbestos products, the Government covenanted that such use would be in a safe and proper manner, so that Fibreboard would not be deprived of the benefit of its contracts; 5) by retaining title to the asbestos used by Fibreboard, a contract of bailment was created under which the Government assumed all risks incident to its use; 6) by limiting the amount of liability insurance Fibreboard could include as a cost in its

contracts, the Government agreed to assume any uninsured risks.

Fibreboard claims entitlement to recovery of costs that it incurred consequent to the Government's violation of the Selective Training and Service Act of 1940, Pub.L. No. 76–783, § 9, 54 Stat. 885 (1940), since the Government's alleged failure to take precautions to avoid injury deprived Fibreboard of the right under the Act to fair and just compensation for the performance of war contracts. Fibreboard also claims that the Government's limitation of its own liability and failure to enforce safety standards while aware of potential risks shifted liability for those risks to Fibreboard and that the costs plaintiff incurred thereby constituted a taking of Fibreboard's property without just compensation in violation of the fifth amendment. Finally, Fibreboard charges that the Government's concealment of its knowledge of the risk posed by asbestos use and of the inadequacy of precautions taken constituted bad faith in negotiating and performing the contracts, thus forming the basis for reformation of those contracts.

4. *H.K. Porter Company, Inc.*, No. 515–85C (Cl.Ct., filed Sept. 6, 1985)

The suit by H.K. Porter, filed in the Claims Court on September 6, 1985, seeks indemnification for its damages from suits for injuries from asbestos exposure "[d]uring World War II, and at all times relevant hereto." Compl. ¶ 5. The suit encompasses four contract claims and a fifth amendment claim.

H.K. Porter's first contract claim is essentially identical to Eagle–Picher's claim based on warranty of specifications, with the further warranty that contract performance in compliance with the specifications would not increase H.K. Porter's costs. The second contract claim mirrors Eagle Picher's claim based on warranty of care in use, with the addition of an implied covenant of good faith and fair dealing that obligated the Government to specify and use H.K. Porter's products safely. H.K. Porter's fourth contract claim is the same as Eagle–Picher's superior knowledge

claim. The sale by the Government of raw asbestos to H.K. Porter without including warnings allegedly created an implied warranty that the asbestos was safe, merchantable, and fit for its intended purpose. H.K. Porter's fifth amendment claim embodies the same rationale as that of Fibreboard's.

5. *Raymark Industries, Inc.,* No. 12–88C (Cl.Ct., filed Jan. 7, 1988)

Raymark, the most recent claimant against the United States seeking indemnification for settlements and litigation of asbestos caused injuries, filed a response to defendant's summary judgment motion on December 15, 1988, stating that it had determined not to oppose defendant's motion based on prudential considerations of Federal Circuit decisions on section 1500 and on the merits and in view of RUSCC 11.

III. Third-party suits in the Western District of Washington, Nos. C–80–923M, C–80–924M, C–84–154M, *et al.* (W.D. Wash., third party filed Feb. 3, 1983)

On February 3, 1983, Eagle–Picher filed ten third-party suits against the United States seeking indemnification for its liabilities to employees with asbestos related injuries allegedly caused while employed at the Puget Sound Naval Shipyard. One of these ten cases, *Albert Lopez, et al. v. Eagle–Picher Industries, Inc. v. United States,* No. C–84–155M (W.D.Wash., filed Feb. 3, 1983), which was treated as a test case, was dismissed on May 19, 1986, for failure to state a claim. *Lopez v. Johns Manville,* 649 F.Supp. 149 (W.D.Wash. 1986). Although the decision in *Lopez* indicated that all third-party claims against the Government were dismissed, orders dismissing the remaining nine cases were not entered until June 30, 1986. The dismissal in *Lopez* was appealed and affirmed *sub nom. Lopez v. A.C. & S., Inc.,* 858 F.2d 712 (Fed.Cir.), *reh'g denied* (Nov. 21, 1988), *petition for cert. filed sub nom. Raymark Industries, Inc. v. United States,* No. 88–1418, 57 U.S.L.W. 3606 (U.S. Feb. 21, 1989). The Western District of Washington deci-

sion in *Lopez* also discussed and disposed of a number of third-party actions filed by Raymark on February 7, 1983. The Federal Circuit's affirmance of *Lopez* also affirmed the dismissal of Raymark's appeal.

The Western District of Washington suits were initiated by a complaint containing nine claims, five in negligence, two in contract, and two in admiralty.

The negligence claims, although containing minor variations in language, are the same as those made in the *All Maine Asbestos Litigation* third-party suits. Claim 3 is for breach of duty to exercise due care in making the workplace safe arising from third-party defendant's role in controlling specifications and the shipyards (*All Maine Asbestos* claim 5). Claim 4 is for breach of duty to warn and make the workplace safe based on third-party defendant's role as owner of vessels and work places (*All Maine Asbestos* claim 6). Claim 5 alleges that third-party defendant assumed a duty to warn and to establish and enforce safety regulations by undertaking to study danger of asbestos exposure and efforts to protect the health of shipyard workers (*All Maine Asbestos* claim 7). Claim 6 alleges a duty to warn of the health risks of exposure both to tobacco and asbestos based on third-party defendant's superior knowledge of those risks (*All Maine Asbestos* claim 8). Claim 7 is for breach of duty to warn of health risks arising from third-party defendant's role as seller of raw asbestos while knowing of such risks (*All Maine Asbestos* claim 1).

The first contract claim in the Western District of Washington actions, claim 1, alleges that by writing and enforcing specifications for asbestos products, third-party defendant impliedly warranted the specifications for accuracy, feasibility, and safety. Claim 2 alleges breach of implied warranty of care in specifying and using asbestos products based on the Government's role in controlling the specifications and shipyards.

The two admiralty claims are contingent: If admiralty jurisdiction is applicable and if third-party plaintiffs are found liable for injuries sustained by shipyard workers,

then third-party plaintiffs are entitled to indemnification or contribution from third-party defendant because the injuries were caused by wrongs of the Government (claim 8), and because the allegedly defective asbestos was sold by third-party defendant to the manufacturers and used by them in compliance with specifications promulgated by third-party defendant (claim 9).

### IV. Claims Court cases involving third-party plaintiffs in Western District of Washington cases

Both Eagle–Picher and Raymark are third-party plaintiffs in the Washington cases. Eagle–Picher's Claims Court suit is synopsized *supra* at p. 150; Raymark's position on defendant's motion is discussed *supra* at p. 152.

### V. *Mann v. Pittsburgh Corning Corp., et al. v. United States*, No. 83–477–N (E.D.Va., third party filed Jan. 13, 1984, and June 15, 1984)

Both Raymark and H.K. Porter filed third-party actions against the United States for indemnification and contribution in the *Mann* case in January and June 1984, respectively. The underlying suit alleges that Charles Wesley Mann was exposed to Raymark's asbestos products from July 1946 until February 1973, during his employment at Norfolk Naval Shipyard. The two third-party actions are currently pending in the Eastern District of Virginia.

Of the nine claims made in the third-party action, all but one are essentially the same as claims made in *All Maine Asbestos Litigation* and/or in the Western District of Washington cases. Claim 6 alleges entitlement to indemnification because, should it be found that third-party plaintiff was negligent, such negligence was passive and secondary to the active and primary negligence of third-party defendant. Under this theory primary responsibility lies with the Government for any injuries arising from asbestos exposures, because the Government controlled the workplace and specifications for asbestos products.

### VI. Claims Court cases involving Third-party plaintiffs in *Mann*

Raymark's position on this motion is discussed *supra* at p. 152. The claims of H.K. Porter in the Claims Court have been addressed *supra* at p. 152.

### VII. *Miller v. Johns–Manville Bldg. Prod., et al.*, No. 78–1283E (W.D. Pa., filed June 1, 1979)

This action was brought against nine asbestos suppliers, including Keene Building Products, by the personal representative of the estate of a laborer allegedly injured from asbestos exposure in 1943. A third-party action by Keene against the United States and Celotex Corporation was initiated on June 1, 1979, by the law firm of Keene's insurance company.

The theory of the third-party action is that, if plaintiff was injured by asbestos dust, the asbestos was mined and manufactured by Celotex Corporation and was supplied by, or according to specifications of, the Government. Therefore, should Keene be found liable for plaintiff's injuries, Keene is due contribution or indemnification from Celotex Corporation and the Government.

Although it is unclear whether the court acted on Keene's motion voluntarily to dismiss its third-party complaint, defendant accepts a dismissal date of May 13, 1980.

### VIII. *Keene Corp. v. United States*, No. 579–79C (Ct.Cl., filed Dec. 21, 1979; amended petition filed May 1, 1981)

The first of Keene's suits, filed on December 21, 1979, with the predecessor Court of Claims, contained four warranty claims. Subsequently, on May 1, 1981, Keene filed an amended petition, by leave, also containing four warranty claims varying to some extent from the initial four. Keene's damages grow out of more than 5,000 suits filed against it by persons alleging injury from asbestos exposure "commencing as early as the mid–1930's." Amended Pet. ¶ 13.

In the amended petition, plaintiff claims that the Government, as supplier of asbestos, made and breached a warranty that the asbestos would be safe for its intended purpose. The Government also allegedly breached an implied warranty to use asbestos products safely to avoid injury. This warranty arose both because of the Government's control over the workplace and because of its role as promulgator of specifications and its superior knowledge of hazards. The Government's superior knowledge also allegedly created a duty to reveal that knowledge since it increased third-party plaintiff's cost of performance. The Government allegedly made and breached a warranty that compliance with its specifications would result in a safe product.

### IX. *Keene Corp. v. United States*, No. 80–CIV–0401 (GLG) (S.D.N.Y., filed Jan. 22, 1980)

This suit seeking indemnification, contribution, or apportionment for amounts Keene has spent, and may be required to spend, in defending and settling thousands of personal injury actions was filed on January 22, 1980. The underlying actions also are for injuries from exposures back to the 1930's.

The indemnification suit consisted of 23 counts, eight of which allege breach of implied warranty. Counts 2 and 15 claimed breach of warranty that asbestos supplied by the Government be safe for its intended purpose, and counts 8 and 18 asserted breach of a warranty that if the Government's specifications were complied with, satisfactory performance would result. Count 16 alleged breach of warranty to make the workplace safe, and counts 6, 10, and 17 alleged breach of warranty to use asbestos products in a safe manner.

The nine counts for negligence charged the Government with breach of duty to provide a safe workplace (counts 3 and 5), to warn of risks of exposure to asbestos (counts 4 and 9), and to design a safe product (count 7). Two broad counts included all specified negligence charges (counts 11 and 12).

Count 13 alleged strict liability for the Government's having knowingly sold a defective product.

Keene also made five claims under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193 (1976) (the "FECA"). Plaintiff claimed that since the Government has limited its liability to amounts due under the FECA and recoups amounts paid under FECA from any settlements or judgments paid by plaintiff, the Government thereby is unjustly enriched (count 19); that plaintiff is due such amounts as "money had and received" (count 20); that such recoupment has increased plaintiff's costs (count 21); that the recoupment amounts to a taking of plaintiff's property without compensation (count 22); and that continuation of recoupment by the Government causes plaintiff irreparable injury for which it has no adequate remedy at law (count 23).

This suit was dismissed by the district court for pleadings inadequate to invoke FTCA jurisdiction. *Keene Corp. v. United States*, No. 80–Civ–0401 (S.D.N.Y. Sept. 30, 1981). On appeal the Second Circuit affirmed the order of dismissal. *Keene Corp. v. United States*, 700 F.2d 836 (2d Cir.1983), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

### X. *Keene Corp. v. United States*, No. 585–81C (Ct.Cl., filed Sept. 25, 1981)

Filed in the Court of Claims on September 25, 1981, Keene's second petition alleges a violation of plaintiff's fifth amendment rights and demands compensation for amounts paid in settlements and judgments in favor of claimants allegedly exposed to Keene's asbestos products beginning in the 1930's. Claim 1 alleges that the recoupment by the Government of amounts that it has paid to injured workers under FECA is an unconstitutional taking of Keene's property without just compensation, because the injuries to underlying plaintiffs were caused by actions of the Government. Further, such recoupments increase the amounts of judgments and settlements required to be paid by Keene. In claim 2 plaintiff charges that the FECA recoup-

ments impair plaintiff's contract rights and thus amount to a fifth amendment taking.

### XI. *GAF Corp. v. United States*, No. 83–1322 (D.D.C., filed May 6, 1983)

On May 6, 1983, GAF filed an indemnification action against the United States in the United States District Court for the District of Columbia to recover Keene's damages from 766 shipyard worker suits alleging exposure from the 1930's to the date of the suit. The suit consisted of one implied warranty count, three negligence counts, and a "summary" count alleging entitlement to indemnification.

Claims in negligence are for negligent and wrongful design of specifications for asbestos products (similar to *All Maine Asbestos* claim 5) and breach of duties to provide a safe workplace (*All Maine Asbestos* claim 6) and to reveal superior knowledge of risk of exposure to asbestos.

The warranty count alleges breach of warranty of safety, merchantability, and fitness of asbestos sold by the Government to plaintiff without warnings.

GAF's fifth count does not add breaches of duty or of warranty obligation, but, rather, states that the Government's controlling role as the promoter of production, promulgator of specifications, seller of asbestos, and operator of shipyards rendered GAF's actions in causing injuries to plaintiffs in underlying suits passive and secondary. Therefore, GAF claims entitlement to indemnification for amounts that it has been required to pay to those underlying plaintiffs.

The case is pending in district court.

### XII. *GAF v. United States*, No. 287–83C (Cl.Ct., filed May 5, 1983)

GAF's Claims Court action was filed on May 5, 1983, one day prior to its filing in the United States District Court for the District of Columbia. Although a suit for indemnification, the complaint does not specify dates of exposure alleged in the underlying suits. The complaint contains four claims in contract. Claim 1 is for breach of implied warranty of accuracy, feasibility, and safety of specifications for asbestos products that were promulgated and enforced by the Government. Claim 2 is for breach of the implied warranty of due care in using asbestos products in shipyards that were controlled by the Government. As seller of raw asbestos to GAF, the Government is charged with an implied warranty that it was safe, merchantable, and fit for its intended purpose. GAF also alleges breach of implied duty to reveal the Government's superior knowledge of the risks of exposure to asbestos.

### DISCUSSION

■ 28 U.S.C. § 1500 prevents this court from exercising subject matter jurisdiction if, as of the date an action is filed, plaintiff has pending in another federal court the same claim. The jurisdictional inquiry targets the date of filing in the Claims Court, not some subsequent date, such as the date on which the Government is made aware of the antecedent action, or the date on which the Government invokes section 1500 seeking to dismiss the Claims Court action, or the date on which the Claims Court acts. *Tecon Engr's, Inc. v. United States*, 170 Ct.Cl. 389, 395, 399, 343 F.2d 943, 946, 949 (1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). Therefore, a plaintiff cannot cure a want of jurisdiction in the Claims Court by voluntarily or involuntarily dismissing its parallel action, or even by suffering a court-ordered termination on the merits. This overarching principle was not acknowledged in the earlier-filed *Keene Corp.* order, in which this court indicated that circumstances might justify allowing a plaintiff to withdraw an earlier-filed action to permit the Claims Court action to proceed. *See Keene Corp.*, 12 Cl.Ct. at 216. However, the Federal Circuit gave no encouragement to allowing a subsequent cure, and the Supreme Court's intervening decision in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988), countermands it.

■ The issues[4] to be resolved are 1) whether plaintiffs' Claims Court suits plead the same operative facts as do earlier-filed actions against the United States and 2) if so, as to each plaintiff, whether the earlier-filed action was pending when the Claims Court suit was filed. As to GAF, there is the separate issue of whether its later-filed case should be treated as "pending," because it was filed only one day after GAF's Claims Court action.

Defendant argues that section 1500 prevents the Claims Court from exercising jurisdiction over all the actions. As to each plaintiff, it is defendant's position that jurisdiction is precluded because an earlier-filed complaint asserting the same claim or claims as pressed in the Court of Claims or Claims Court was pending in federal district court when the action was commenced here. Although plaintiffs briefed the issues individually, they argue in common that the Federal Circuit's decision in *Johns–Manville Corp.* does not reach their Claims Court actions on the basis that no pending action on the same claim or claims now exists.

The Federal Circuit approached the first issue, as had this court, by analyzing the operative facts cited in the earlier-filed and Claims Court actions, respectively, to ascertain whether there is present the requisite homogeneity of operative facts to constitute the same claim. *See* 855 F.2d at 1559.

All complaints in other courts and the Claims Court cases seek recovery for costs and expenses incurred and other damages engendered by suits brought by shipyard workers against plaintiffs alleging injury from exposure to asbestos or asbestos products. The complaints or third-party complaints of each plaintiff filed in district court and each plaintiff's Claims Court action are framed upon a homogeneity of operative facts, including some or all of the following:

—the Government's specifications required asbestos in the insulation products;

—plaintiffs were compelled to perform the supply contracts with the Government;

—the Government controlled the shipyard working conditions;

—the Government restricted access to the shipyards;

—the Government impliedly agreed not to hold plaintiffs liable for damages, provided that the asbestos products were made according to the specifications;

—the Government had a duty to develop and, once adopted, to enforce its standards for limiting exposure to asbestos or asbestos products;

—the Government had a duty to disclose its knowledge of the shipyard working conditions;

—the Government knew of the dangers of exposure to asbestos and asbestos products;

—the Government failed to disclose information regarding shipyard working conditions;

---

**4.** Either the Federal Circuit in *Johns–Manville Corp.* or this court in *Keene Corp.*, as approved in *Johns–Manville Corp.*, has already addressed all of plaintiffs' other arguments, including: 1) that differing operative facts as between the instant non-Claims Court and Claims Court actions take these cases outside the coverage of section 1500; 2) that the existence of different underlying claimants as between the non-Claims Court and Claims Court actions takes a case outside the coverage of section 1500; 3) that differing legal theories in the non-Claims Court and Claims Court actions take a case outside the coverage of section 1500; 4) that a stay of a pre-filed non-Claims Court action takes a case outside the coverage of section 1500; 5) that a plaintiff may be given an opportunity to withdraw or secure dismissal of a pending pre-filed non-Claims Court action, and that if it then withdraws or secures dismissal of said action, section 1500 will not require dismissal of the Claims Court action; 6) that the law of the case doctrine requires denial of defendant's section 1500 motion; 7) that section 1500 does not apply when the non-Claims court action is a third-party action; and 8) that a claim in an amended complaint in the Claims Court filed after a district court action has been dismissed in whole or part does not relate back to the date on which the original complaint was filed. The court adopts defendant's analysis, including citations, of the prior treatment of issues Nos. 1–7 in its final brief. *See* Def's Br. filed Apr. 21, 1989, at 4–11. Issue No. 8 was treated in *Keene Corp.*, 12 Cl.Ct. at 210. *See also infra* note 6.

—plaintiffs are not liable for acts or omissions of the Government.

It is concluded, therefore, that all the prior-filed complaints and GAF's complaint constitute suits on the same claims as plaintiffs' claims filed in the Court of Claims and later in the Claims Court.

■ Plaintiffs, other than GAF, argue vigorously that their earlier-filed actions were not pending for purposes of barring the Claims Court from taking jurisdiction over their complaints, because the earlier actions were stayed or had been dismissed voluntarily or involuntarily when the matter came before the court on defendant's February 27, 1987 motion or now, *i.e.*, the date on which this court acts on defendant's motion. The Federal Circuit's opinion does not support putting a gloss on "pending" actions such as to exclude stayed, suspended, or otherwise inactive cases. *Johns–Manville Corp.*, 855 F.2d at 1567; *see supra* note 4. The Court of Claims in *British American Tobacco Co. v. United States*, 89 Ct.Cl. 438 (1939), *cert. denied*, 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940), dismissed an action under the predecessor to section 1500 even though the simultaneously-filed suit had been terminated by that time. Moreover, *Tecon Engineers* fixed the jurisdictional event as the date the action was filed in the Court of Claims or Claims Court. "The words 'shall not have jurisdiction' pertain solely to the acquiring or taking of jurisdiction by this court when the same plaintiff *already* 'has pending in any other court' another suit on the same claim...." 170 Ct.Cl. at 395, 343 F.2d at 946 (emphasis in original).[5]

This court has recognized at least one situation in which an earlier-filed action will not preclude maintaining an action in the Claims Court. In *National Steel & Shipbuilding Co. v. United States*, 8 Cl.Ct. 274 (1985), as a result of questioning its jurisdiction to proceed, a federal district court required plaintiff to file a subsequent identical action in the Claims Court. This court wrote:

The Government here concedes that jurisdiction lies over plaintiffs' complaint in the district court, although the contrary was urged to Judge Nielsen. The Government takes the position now that the jurisdiction reposed in the district court and the Claims Court is not concurrent, because only this court can consider claims based on an implied-in-fact contract. It is not decided whether such a contract has been established. However, if this court's exercise of jurisdiction turned on such a determination, plaintiffs would be whipsawed—which Congress manifestly did not intend—by exercising their prerogative to file a lawsuit in district court only to be met with the objection that the claim is really one based on an implied-in-fact contract, which lies exclusively within the jurisdiction of this court, and then met in this court (assuming the district court action had been dismissed) with the argument that jurisdiction was lacking due to the failure to prove a contract implied in fact.

8 Cl.Ct. at 275. This court invoked 28 U.S.C. § 1500 to dismiss the Claims Court action. However, if the district court were to resist jurisdiction, the action was allowed to be reinstated. *Id.* at 276.

This result is not unlike the Federal Circuit's approach in *Boston Five Cents Savings Bank, FSB v. United States*, 864 F.2d

5. The principal prior-filed district court action in *Johns–Manville Corp.* had been stayed informally at the time that this court alerted the parties to the problem of section 1500. Therefore, both this court's *Keene Corp.* order and the Federal Circuit's *Johns–Manville Corp.* opinion considered the applicability of section 1500 in the circumstance of an earlier-filed district court suit still pending, albeit stayed. However, the construction of section 1500 that emerges from the Federal Circuit's opinion and this court's order is that section 1500 is applicable as of the date an action is filed in the Claims Court: "The purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Johns–Manville Corp.*, 855 F.2d at 1562 (citations omitted); *see also Keene Corp.*, 12 Cl.Ct. at 206, 207, 212 n. 9. (In the third citation, this court referred to section 1500 as prohibiting "the maintenance of an action in the Claims Court if an action on the same operative facts is pending elsewhere." The word "maintenance" was intended to signify exercise of jurisdiction consistent with the references at pp. 206 and 207.)

137 (Fed.Cir.), *rev'g*, 14 Cl.Ct. 217 (1988), a decision issued several months following *Johns–Manville Corp.* Prior to filing in the Claims Court, plaintiff had tried to assert a money claim in its pending district court action by amendment, but was unsuccessful. The appeals court concluded that the failed amendment did not constitute a pending claim. It also was held that the Claims Court had jurisdiction of a contract claim for money, over which it had exclusive jurisdiction, even though plaintiff had filed an identical claim on the same day in district court. The Federal Circuit held that the Claims Court should have retained jurisdiction by way of suspension pending resolution of the earlier-filed district court complaint for declaratory relief based on the same operative facts. The Federal Circuit relied on *Hossein v. United States*, 218 Ct.Cl. 727 (1978), in reversing the dismissal of the Claims Court action. In *Hossein* the Court of Claims had ruled that section 1500 was inapplicable to a suit in contract for money damages over which the court had exclusive jurisdiction when an identical contract action had been filed contemporaneously in district court. The premise of *Boston Five Cents Savings Bank*, the most recent decision applying section 1500, was that dismissal of a claim based on the same operative facts is not justified if the Claims Court should know that jurisdiction belongs exclusively in the Claims Court. *Accord Brown v. United States*, 175 Ct.Cl. 343, 358 F.2d 1002 (1966) (because district court lacked jurisdiction over plaintiffs' money claim, but had jurisdiction over their equitable claim, Court of Claims reinstated the previously dismissed money claim once district court had dismissed it); *Casman v. United States*, 135 Ct.Cl. 647 (1956) (equitable relief sought in district court did not deprive Court of Claims of jurisdiction over money claim).

■■■ The approach of this court in *National Steel* and that of the Federal Circuit in *Boston Five Cents Savings Bank* must be tempered with the knowledge that they can defeat the purpose of 28 U.S.C. § 1500 if the litigation to perfect jurisdiction in the federal district court is time-consuming, extensive, and costly. Nonetheless, the Federal Circuit in *Boston Five Cents Savings Bank* adopted a case-by-case analysis to ascertain whether the prior-filed district court action should bar a later Claims Court action, and Keene's petition, No. 579–79C filed in the Court of Claims on December 21, 1979, after it had filed a third-party complaint against the United States in *Miller*, commends this type of analysis.[6]

Keene's third-party claim against the Government in *Miller* has been extinguished for nine years. It was filed on June 1, 1979. Keene alleges that local counsel was not authorized to file the May 9, 1979 motion to file the third-party complaint. This assertion is unsupported by affidavit as required by RUSCC Appendix H ¶ 1. *See Cedar Lumber, Inc. v. United States*, 857 F.2d 765, 769 (Fed.Cir.1988). Argument of counsel does not substitute for averments in an affidavit. *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984). However, Keene's April 23, 1980 motion to dismiss its third-party complaint against the United States in *Miller* pleads that "Keene Building Products Corporation has instituted an action in the Court of Claims against the United States of America which should resolve the differences between the parties."

---

**6.** Keene argues that filing its amended complaint with the Court of Claims in No. 579–79C after the dismissal of the third-party complaint in *Miller* cures any jurisdictional defect. This argument was rejected in *Keene Corp.*, 12 Cl.Ct. at 210. *See supra* note 4. As defendant argues, if the factual predicate for jurisdiction existed at the time an action originally was brought, an amendment is permitted by 28 U.S.C. § 1653 (1982), to cure a deficient pleading. *See Mathews v. Diaz*, 426 U.S. 67, 75 & n. 9, 96 S.Ct. 1883, 1889 & n. 9, 48 L.Ed.2d 478 (1976). However,

an amended complaint cannot cure a jurisdictional defect, *i.e.*, to effect the removal of the pendency at the time the Claims Court action is commenced of an earlier-filed, but subsequently dismissed, action on the same operative facts. *See Reynolds v. United States*, 748 F.2d 291, 293 (5th Cir.1984) (amended complaint under the Federal Tort Claims Act dismissed as relating back to original filing date on which no subject matter jurisdiction existed because administrative remedy was not exhausted).

Therefore, Keene has established that the complaint was withdrawn voluntarily.

This court, fully advised by Keene's persuasive arguments, nonetheless concludes that 28 U.S.C. § 1500 deprived the Court of Claims of jurisdiction when its petition was filed, even though Keene voluntarily withdrew the third-party complaint within one year. Were the result otherwise, the precedent would devour the rule. Assuming that a plaintiff could establish that an action within the jurisdiction of another court against the United States was unauthorized (which Keene failed to do in the case at bar), the Claims Court would be required to examine all the litigation activity for one year (or perhaps longer) to ascertain if the Government was engaged sufficiently so that a plaintiff should not be allowed to defer to the Claims Court. The result may seem harsh, but the Supreme Court long ago acknowledged that, given the plain meaning of the statute, a court is "not at liberty to add an exception in order to remove apparent hardship in particular cases." *Corona Coal Co. v. United States,* 263 U.S. 537, 540, 44 S.Ct. 156, 68 L.Ed. 431 (1924) (citations omitted). Application of section 1500 does not call for examining the record of the district court in this manner. Suffice it to say that Keene's situation in respect of *Miller* is not *National Steel* or *Boston Five Cents Savings Bank.*

■ GAF's complaint was filed one day after its complaint had been accepted for filing by the Claims Court. *Tecon Engineers* ruled that Section 1500 does not apply to such actions. 170 Ct.Cl. 389, 343 F.2d 943. Counsel for GAF ably has demonstrated that language in *Tecon Engineers,* 170 Ct.Cl. at 400–01 & nn. 4, 7, 343 F.2d at 950 & nn. 4, 7, concerning "simultaneously" filed actions does not exclude an action filed in federal district court one day after an action was commenced in the Court of Claims from coming within *Tecon's* safe harbor.[7]

This court has concluded that a proper application of the canons of statutory construction in light of the purpose of section 1500 calls for a reexamination of *Tecon Engineers.* See *Keene Corp.,* 12 Cl.Ct. 205–07, 212–16. *Keene Corp.* took the position that section 1500 by its express language applies to actions on the same claim whether filed before or after a plaintiff institutes a Claims Court complaint. Thus, the purpose of the statute—to conserve the Government's litigation resources by forcing a plaintiff to forego the Claims Court as a forum if it elects to have the Government defend in other courts—only is served by invoking the bar to jurisdiction irrespective of when a plaintiff initiates its suit in the Claims Court—before or after another suit on the same claim. Similarly, Congress has established that a later-filed claim for refund in the United States Tax Court can deprive a federal district court or the Claims Court of jurisdiction to the extent that it has been acquired. 26 U.S.C. § 7422(e) (1982). Although this court agrees with GAF's argument that *Tecon* created a jurisdictional bright line, *i.e.,* section 1500 does not reach a suit filed one day following commencement of a Claims Court action, the *Tecon* rule does not comport with the purpose of section 1500. Nonetheless, *Tecon Engineers* is binding precedent on this court.[8]

7. *Tecon Engineers* discussed, but did not overrule, *Hobbs v. United States,* 168 Ct.Cl. 646 (1964) (per curiam). In *Hobbs* plaintiff filed a petition for review of an administrative decision in a federal appeals court one day after commencing his action on the same operative facts in the Court of Claims. The Court of Claims construed section 1500 as "clearly depriv[ing] this court of jurisdiction." 168 Ct.Cl. at 647. As this court noted in *Keene Corp.,* 12 Cl.Ct. at 207, the Court of Claims in *Tecon Engineers* suggested that suits filed simultaneously with Court of Claims actions were subject to section 1500, although it did not go so far as to say whether an interval of one day constituted a "simultaneous" filing.

8. Assuming, *arguendo,* that Keene's voluntary withdrawal of its third-party complaint in *Miller* removed the bar to maintaining No. 579–79C in the Court of Claims as of December 21, 1979, the date of filing, section 1500 might bar its action if the rule in *Tecon Engineers* were overturned. Keene's complaint against the United States in *Keene Corp. v. United States,* No. 80 Civ. 0401 (S.D.N.Y., filed Jan. 22, 1980), is a later-filed case based on the same operative facts.

## CONCLUSION

Defendant's motion is granted except as to GAF, No. 287–83C. The Clerk of the Court shall dismiss the complaints or amended complaints in Nos. 579–79C, 585–81C, 170–83C, 16–84C, 514–84C, 515–85C, and 12–88C for lack of subject matter jurisdiction.

IT IS SO ORDERED.

## ORDER

 UNR filed its Petition for Partial Reconsideration on June 14, 1989, requesting revision of language in this court's opinion filed in *Keene Corp., et al. v. United States*, Nos. 579–79C, 585–81C, 170–83C, 287–83C, 16–84C, 514–84C, 515–85C & 12–88C (Cl.Ct. June 1, 1989). Defendant responded this date, stating that it does not interpose any objection to the relief requested.

UNR is correct that its "Amended List of Actions by UNR Industries, Inc., *et al.*, Against the United States, Etc.", filed on November 8, 1989, represented in footnotes that UNR had filed notices of dismissal of its third-party claims against the United States brought by Model Third Party Complaints A and B in the *In re All Maine Asbestos Litigation*. However, before including procedural history not supported by documents of record, this court was obligated to verify the facts with the courts involved. The Clerk's Office for the District of Maine advised that all legal proceedings in that court involving UNR continued to by stayed. Apparently, the recordation of the voluntary dismissal was overlooked since it had not been affirmatively acted upon by that court.

In response to UNR's petition for partial reconsideration, the District of Maine was again contacted, and the recordation of a voluntary dismissal of UNR's third-party actions on October 20, 1988, was confirmed. Accordingly,

IT IS ORDERED, as follows:

Plaintiffs' motion for partial reconsideration is granted.*

* The portions of this Order amending the original opinion are incorporated therein.